UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
MOHAMMED WAQQAD,

          Plaintiff,

  -against-

TRINE ACQUISITION CORP., LEO
HINDERY, JR., M. IAN G. GILCHRIST,
JOSEPHINE LINDEN, MARC NATHANSON,
KENT R. SANDER, TOM WASSERMAN,
and ABBAS F. ZUAITER,

          Defendants.
----------------------------------------- X

Case No.: _____

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

      Plaintiff, Mohammed Waqqad ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

      1.     This action is brought by Plaintiff against Trine Acquisition Corp. ("Trine" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Trine, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Merger") between Trine and Desktop Metal, Inc. ("Desktop Metal"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

      2.     On August 26, 2020, Trine entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Trine will issue shares of its class A common stock for

1

both common and preferred holders of Desktop Metal stock resulting in an estimated $2.5 billion pro forma equity value. Each share of each series of Desktop Metal preferred stock issued and outstanding immediately prior to the effective time of the Business Combination (other than shares owned by Desktop Metal as treasury stock or dissenting shares) will be converted into the right to receive a number of shares of Trine Class A common stock (deemed to have a value of $10 per share) with an aggregate implied value equal to the product of the liquidation amount (as described in Desktop Metal's certificate of incorporation ("Desktop Metal's charter")) for such series of preferred stock multiplied by the number of shares of such series of Desktop Metal preferred stock outstanding immediately prior to the effective time as if the Business Combination were a Deemed Liquidation Event (as defined in Desktop Metal's charter) (the "aggregate preferred stock consideration") divided by the number of shares of such series of Desktop Metal preferred stock outstanding immediately prior to the effective time of the Proposed Merger. Each share of Desktop Metal common stock issued and outstanding immediately prior to the effective time of the Business Combination (other than shares owned by Desktop Metal as treasury stock or dissenting shares) will be converted into the right to receive a number of shares of Trine Class A common stock (deemed to have a value of $10 per share) with an aggregate implied value equal to $1,830,000,000 minus the aggregate implied value of the aggregate preferred stock consideration divided by the number of shares of Desktop Metal common stock outstanding on a fully diluted basis immediately prior to the effective time of the Proposed Merger. The Combined Company will continue to operate as Desktop Metal and trade on the NYSE under the ticker symbol "DM." After the closing of the Proposed Merger, Trine's current common stockholders will only retain an ownership interest of less than 13.5% in the post-combination company.

3.      On November 10, 2020, in order to convince Trine shareholders to vote in favor of

the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading proxy statement/consent solicitation statement/prospectus on Form 424B3 (the "Proxy") with the SEC in violation of Sections 14(a) and 20(a) of the Exchange Act and in breach of the Individual Defendants' duty of disclosure.

4. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the conflicts of interest facing the financial advisors employed by the Company including, BTIG, LLC ("BTIG") and Credit Suisse Securities (USA) LLC ("Credit Suisse"); and (ii) the financial projections and valuations of Desktop Metal.

5. The special meeting of Trine shareholders to vote on the Proposed Merger is scheduled for December 8, 2020 (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise his corporate suffrage rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and breach of the duty of disclosure. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to Trine's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of disclosure.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316

10. Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because the Company's principal executive office is located in this District at 405 Lexington Avenue, 48th Floor, New York, NY 10174 and Defendants are found or are inhabitants or transact business in this District.

## **PARTIES**

11. Plaintiff is, and at all relevant times has been, a holder of Trine common stock.

12. Defendant Trine is a blank check company formed in order to effect a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or other similar business combination with one or more businesses or entities. The Company's principal executive office is located at 405 Lexington Avenue, 48th Floor, New York, NY 10174. The Company's common stock trades on the NYSE under the ticker symbol "TRNE".

13. Individual Defendant Leo Hindery, Jr. has been the Chief Executive Officer ("CEO") of the Company and Chairman of the Board at all relevant times.

14. Individual Defendant M. Ian G. Gilchrist has been the President of the Trine and served as director of the Company at all relevant times.

15. Individual Defendant Josephine Linden has served as director of the Company at all relevant times.

16. Individual Defendant Marc Nathanson has served as director of the Company at all relevant times.

17. Individual Defendant Kent R. Sander has served as director of the Company at all relevant times.

18. Individual Defendant Tom Wasserman has served as director of the Company at all relevant times.

19. Individual Defendant Abbas F. Zuaiter has served as director of the Company at all relevant times.

20. The Individual Defendants referred to in ¶¶ 13-19 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with Trine they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

I. **Background and the Proposed Merger**

21. Trine is a blank check company. The Company is formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination with one or more businesses. The Company intends to acquire and operate a business in the technology, consumer, and/or media and communications industries.

5

22.     Desktop Metal is a manufacturing and technology company focused on the production of end-use parts. It offers a portfolio of integrated additive manufacturing solutions for engineers, designers and manufacturers comprised of hardware, software, materials and services. Its solutions span use cases across the product life cycle, from product development to mass production and aftermarket operations, and they address an array of industries, including automotive, aerospace, healthcare, consumer products, heavy industry, machine design and research and development.

23.     On August 26, 2020, Trine issued a press release announcing the Proposed Merger, which states in relevant part:

**DESKTOP METAL TO BECOME PUBLIC, CREATING THE ONLY
LISTED PURE-PLAY ADDITIVE MANUFACTURING 2.0 COMPANY**

- *Desktop Metal is a leader in mass production and turnkey additive manufacturing solutions, offering the fastest metal 3D printing technology in the market, up to 100x the speed of legacy technologies(1)*
- *The additive manufacturing industry is estimated to grow from $12 billion to $146 billion this decade as it shifts from prototyping to mass production*
- *Desktop Metal to become publicly listed through a business combination with Trine (NYSE:TRNE)*
- *Combined company to have an estimated post-transaction equity value of up to $2.5 billion and will remain listed on the NYSE under the ticker symbol "DM" following expected transaction close in the fourth quarter of 2020*
- *Transaction to provide up to $575 million in gross proceeds, comprised of Trine's $300 million of cash held in trust (assuming no redemptions) and a $275M fully committed common stock PIPE at $10.00 per share, including investments from Miller Value Partners, XN, Baron Capital Group, Chamath Palihapitiya, JB Straubel, and HPS Investment Partners*
- *Leo Hindery, Jr., legendary technology investor and operator, to join Desktop Metal's board*
- *All significant Desktop Metal shareholders including, Lux Capital, NEA, Kleiner Perkins, Ford Motor Company, Google Ventures, and Koch Disruptive Technologies will retain their equity holdings through Desktop Metal's transition into the public listed company*

BOSTON, MA (August 26, 2020) – Desktop Metal, Inc. ("Desktop Metal" or the "Company") a leader in mass production and turnkey additive manufacturing solutions, announced today it will become a publicly listed company in order to

accelerate its growth trajectory within the rapidly growing additive manufacturing market and capitalize on the strong secular tailwinds supporting the reshoring of manufacturing and supply chain flexibility. The Company has signed a definitive business combination agreement with Trine Acquisition Corp. (NYSE: TRNE), a special purpose acquisition company led by Leo Hindery, Jr. and HPS Investment Partners, a global credit investment firm with over $60 billion in assets under management. Upon closing of the transaction, the combined operating company will be named Desktop Metal, Inc. and will continue to be listed on the New York Stock Exchange and trade under the ticker symbol "DM."

The additive manufacturing industry grew at a 20 percent annual compound rate between 2006 and 2016 before accelerating to 25 percent compound annual growth over the last 3 years, a rate that is expected to continue over the next decade as the market surges from $12 billion in 2019 to an estimated $146 billion in 2030. This market inflection is being driven by a shift in applications from design prototyping and tooling to mass production of end-use parts, enabled by the emergence of what Desktop Metal refers to as "Additive Manufacturing 2.0," a wave next-generation additive manufacturing technologies that unlock throughput, repeatability, and competitive part costs. These solutions feature key innovations across printers, materials, and software and pull additive manufacturing into direct competition with conventional processes used to manufacture $12 trillion in goods annually.

Desktop Metal's cash on hand after giving effect to the transaction will enable the Company to capitalize on its position at the forefront of Additive Manufacturing 2.0 by accelerating the Company's rapid growth and product development efforts. The Company will also use the proceeds to support constructive consolidation in the additive manufacturing industry.

Led by an experienced team with deep operational and scientific pedigree, Desktop Metal has distribution in more than 60 countries around the world and broad adoption from leading companies spanning array of industries, including automotive, consumer products, industrial automation, medical devices, and aerospace & defense.

Desktop Metal is ready to rapidly deploy its full suite of additive manufacturing solutions to existing and new customers on a global basis. The Company's broad product portfolio includes the Studio SystemTM, an office-friendly metal 3D printing system for low volume production, which has been shipping in volume for more than a year, as well as the new Shop SystemTM for mid-volume manufacturing and its continuous fiber composite printer, FiberTM, both of which are expected to ship in the fourth quarter of 2020. The Company's Production SystemTM, which has begun shipping to early customers and is expected to ship in volume in the second half of 2021, is designed to be the fastest way to 3D print metal parts at-scale, achieving print speeds up to 100x faster than legacy technologies and delivering thousands of parts per day at costs competitive with traditional manufacturing.

7

"We are at a major inflection point in the adoption of additive manufacturing, and Desktop Metal is leading the way in this transformation," said Co-founder, Chairman & Chief Executive Officer of Desktop Metal, Ric Fulop. "Our solutions are designed for both massive throughput and ease of use, enabling organizations of all sizes to make parts faster, more cost effectively, and with higher levels of complexity and sustainability than ever before. We are energized to make our debut as a publicly traded company and begin our partnership with Trine, which will provide the resources to accelerate our go-to-market efforts and enhance our relentless efforts in R&D."

Leo Hindery, Jr., Chairman & Chief Executive Officer of TRNE added, "After evaluating more than 100 companies, we identified Desktop Metal as the most unique and compelling opportunity, a company that we believe is primed to be the leader in a rapidly growing industry thanks to their substantial technology moat, deep customer relationships across diverse end-markets, and impressive, recurring unit economics. Ric has put together an exceptional team and board of directors with whom we are excited to partner to create the only publicly traded pure-play Additive Manufacturing 2.0 company."

Tom Wasserman, Director of TRNE and Managing Director of HPS Investment Partners added, "We are thrilled to partner with Ric and Desktop Metal to help the Company achieve its goals and capture the massive Additive Manufacturing 2.0 opportunity. Thanks to its tremendous team, we believe Desktop Metal has incredible potential for future growth, which will only be accelerated by the extensive financial resources provided by this transaction."

**Transaction Overview**

Pursuant to the transaction, TRNE, which currently holds $300 million in cash in trust, will combine with Desktop Metal at an estimated $2.5 billion pro forma equity value. Assuming no redemptions by TRNE's existing public stockholders, Desktop Metal's existing shareholders will hold approximately 74 percent of the issued and outstanding shares of common stock immediately following the closing of the business combination.

Cash proceeds in connection with the transaction will be funded through a combination of TRNE's cash in trust and a $275 million fully committed common stock PIPE at $10.00 per share, including investments from funds and affiliates of Miller Value Partners, XN, Baron Capital Group, Chamath Palihapitiya, JB Straubel, and HPS Investment Partners.

The boards of directors of both Desktop Metal and TRNE have unanimously approved the proposed transaction. Completion of the proposed transaction is subject to approval of Trine and Desktop Metal stockholders and other closing conditions, including a registration statement being declared effective by the

Securities and Exchange Commission, and is expected to be completed in the fourth quarter of 2020.

Additional information about the proposed transaction, including a copy of the merger agreement and investor presentation, will be provided in a Current Report on Form 8-K to be filed by TRNE today with the Securities and Exchange Commission and available at www.sec.gov.

**Advisors**

Credit Suisse is serving as the exclusive capital markets advisor to Desktop Metal and as sole private placement agent to TRNE. BTIG, LLC is serving as financial and capital markets advisor to TRNE. Latham & Watkins LLP is serving as legal advisor to Desktop Metal, and Paul, Weiss, Rifkind, Wharton & Garrison LLP is serving as legal advisor to TRNE. ICR is serving as investor relations and communications advisor to Desktop Metal.

**II.     The Proxy Omits Material Information**

24.     On November 10, 2020, Defendants filed the materially incomplete and misleading Proxy with the SEC. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision in connection with the Proposed Merger.

A.     <u>The Misleadingly Incomplete Information Regarding the Financial Advisors</u>

25.     The Proxy omits material information about the financial advisors, their relationships, and their roles in the events leading up to the Proposed Merger.

26.     First, the Proxy entirely omits BTIG's role as a financial advisor or their involvement with the events leading up to the Proposed Merger. The Proxy also fails to state the historical relationship between BTIG on the one hand, and the Company (other than their work related to the IPO), the Individual Defendants, Desktop Metal, or any affiliates thereof on the other, including all compensation received or expected to be received from any work performed.

9

27. Second, the Proxy states that HPS Investment Partners, LLC ("HPS") was directly involved in the sales process and that Trine may pay HPS or the HPS Funds, entities affiliated with Trine's directors, fees in connection with potentially providing financing or other investments in connection with the Proposed Merger. However, the Proxy fails to disclose what role they played in the Proposed Merger, whether they provided any financing, or the amount of fees they received or expect to receive. Additionally, the Poxy fails to disclose whether HPS has any relationship with Desktop Metal. Given HPS' direct affiliation with two members of the Board, this information must be disclosed.

28. Third, the Proxy states that Credit Suisse acted both as the financial advisor for Desktop Metal and the advisor for the Company related to the PIPE Transaction, but the Proxy fails to state the compensation Credit Suisse received for acting as a financial advisor for either party, or the historical relationships between Credit Suisse on the one hand, and the Company, the Individual Defendants, Desktop Metal, or any affiliates thereof on the other. It is important for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered when assessing how much credence to give its work or how much scrutiny to give the Proposed Merger. A reasonable shareholder would want to know what important economic motivations that the advisor might have.

29. Additionally, Desktop Metal's management prepared and provided 5+ years of financial projections to Credit Suisse for analysis in connection with the evaluation of the Proposed Merger. Furthermore, the Proxy references multiple instances where the valuation of Desktop Metal and/or the combined company was discussed, but fails to disclose any analyses performed by Credit Suisse in support of its views on the valuation of the Desktop Metal business implied by

10

the terms of the potential business combination and the potential benefits to stockholders of Trine of such a transaction. Such information is plainly material to Trine shareholders and strikes at the heart of the decision they are being asked to make regarding the Proposed Merger. The failure to include this material information in the Proxy renders the summary provided therein misleadingly incomplete.

B.   The Misleadingly Incomplete Financial Projections and Valuation Information

30.   The Proxy omits critical financial projections for Desktop Metal, including income/loss projections and free cash flow projections, both of which existed and were readily available to be disclosed (together the "Omitted Projections"). Defendants elected to summarize Desktop Metal's financial projections, but they excised and failed to disclose the Omitted Projections. By disclosing certain projections in the Proxy and withholding the Omitted Projections, Defendants render the table of projections on page 183 of the Proxy materially incomplete and provide a misleading valuation picture of Desktop Metal.

31.   There are significant differences between cash flow projections—widely recognized as the most important valuation metric when it comes to valuing a company and its stock—and the EBITDA projections that are included in the Proxy. EBITDA projection metrics are not sufficient analogs for cash flow projections. Well settled principles of corporate finance and valuation dictate that the value of companies and their stock should be premised upon the company's projected future cash flows, not projected EBITDA.[1] As Warren Buffet and other financial experts have stated: "References to EBITDA make us shudder.  Too many investors focus on earnings before interest, taxes, depreciation, and amortization.  That makes sense, only if you

---

[1]   Pratt, Shannon. "Net Cash Flow: The Preferred Measure of Return." Cost of Capital. 16. ("Occasionally, we find an analyst treating earnings before interest, taxes, depreciation, and amortization (EBITDA) as if it were free cash flow. This error is not a minor matter…").

think capital expenditures are funded by the tooth fairy."[2] Relying solely on EBITDA to provide a fair summary of a company's financial prospects has numerous pitfalls. EBITDA does not take into account any capital expenditures, working capital requirements, current debt payments, taxes, or other fixed costs that are critical to understand a company's value.[3] As a result of these material differences between EBITDA and cash flows, experts recognize cash flows as a much more accurate measure when it comes to analyzing the expected performance of a company.

32. In light of the significant differences between the Omitted Projections and the figures disclosed in the Proxy, the table of projections on page 183 of the Proxy is materially incomplete and misleading. By failing to include the Omitted Projections, the table provides a materially incomplete and misleading overall valuation picture of Desktop Metal. Simply put, net income and cash flow projections are irreplaceable when it comes to fully and fairly understanding a company's projections and value.

33. Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the projections provided to and relied upon by the Board but

---

[2] Elizabeth MacDonald, *the Ebitda folly*, FORBES (March 17, 2003), http://www.forbes.com/global/2003/0317/024.html.

[3] Cody Boyte, *Why EBITDA is Not Cash Flow*, AXIAL FORUM (Nov. 19, 2013), http://www.axial.net/forum/ebitda-cash-flow/

failed to disclose the Omitted Projections. This omission renders the summary of the projections table, Desktop Metal's financial picture, and the recommendation of the Board provided in the Proxy misleadingly incomplete.

34. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act and the Individual Defendants' duty of candor/disclosure. Absent disclosure of the foregoing material information prior to the forthcoming Shareholder Vote, Plaintiff will be unable to cast an informed vote regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any

13

material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

39. Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Merger. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the financial advisors conflicts; and (ii) Desktop Metal's financial projections and valuation.

40. In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

41. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that the financial advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial

analyses provided them. Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

42.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement.

43.     Trine is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

44.     The misrepresentations and omissions in the Proxy are material and Plaintiff will be deprived of his right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of Trine's shareholders. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of Trine within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or knowledge of the misleadingly incomplete statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the material statements that Plaintiff contends are incomplete and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

49. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger

Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

### Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure

53. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

55. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to

Plaintiff and the Company's other public shareholders.

56. The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

57. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of Trine shareholders to vote on the Proposed Merger or consummating the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

//

//

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 1, 2020                **MONTEVERDE & ASSOCIATES PC**

  */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*